# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| UNIQUE FABRICATING, INC., *et al.*,[1] | Case No. 23-11824 (KBO) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: 1/30/2024 at 10:30 a.m. (ET) |
| | Objection Deadline: 1/22/2023 at 4:00 p.m. (ET) |

## MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER (I) AUTHORIZING THE TRUSTEE TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) APPROVING SHARING ARRANGEMENT, AND (IV) GRANTING RELATED RELIEF

David W. Carickhoff, the chapter 7 trustee (the "**Trustee**") of the bankruptcy estates ("**Estates**") of the above-captioned debtors (collectively, the "**Debtors**") files this Motion for entry of an order, substantially in the form attached hereto (the "**Cash Collateral Order**"), pursuant to sections 105(a), 361, 362, 363, 507(b), and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004(h), 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") (i) authorizing the Trustee to use cash collateral subject to the terms and conditions set forth in the Cash Collateral Order, (ii) granting adequate protection, (iii) approving a sharing arrangement, and (iv) granting related relief. In support of this Motion, the Trustee respectfully states as follows:

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Unique Fabricating, Inc. (6791); Unique Fabricating NA, Inc. (8349); Unique Fabricating South, Inc. (9868); Unique-Prescotech, Inc. (9729); Unique-Chardan, Inc. (8350); Unique Molded Foam Technologies, Inc. (3749); Unique-Intasco USA, Inc. (8572); and Unique Fabricating Realty, LLC (N/A).

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2] Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, 507(b), and 552, Bankruptcy Rules 2002, 4001, 6004(h), and 9014 and Local Rule 4001-2.

## RELEVANT BACKGROUND

3. On November 8, 2023 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

4. David W. Carickhoff has been appointed as interim trustee of the Debtors' estates pursuant to Bankruptcy Code section 701(a). The section 341(a) meeting of creditors was held and concluded on December 15, 2023.

5. These cases are being jointly administered under *In re Unique Fabricating, Inc.*, Case No. 23-11824 (KBO), pursuant to an order entered on November 13, 2023 [D.I. 33].

6. Prior to the Petition Date, the Debtors were engaged in the engineering and manufacturing of multi-material foam, rubber, and plastic components utilized in noise, vibration and harshness, acoustical management, water and air sealing, decorative and other functional applications. The Debtors served the North America transportation, appliance, medical, and consumer off-road markets. Sales were conducted directly to major transportation, appliance, medical, and consumer/off-road manufacturers.

---

[2] Pursuant to Local Rule 9013-1(f), the Trustee hereby confirms his consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. The Debtors principal executive offices were located in Auburn Hills, Michigan, and the Debtors had sales, engineering and production facilities in Auburn Hills, Michigan; Concord, Michigan; Lafayette, Georga; Louisville, Kentucky. Non-Debtors have facilities in Monterrey, Mexico; Queretaro, Mexico; and London, Ontario.

8. On November 15, 2023, the Court entered an order [D.I. 87] authorizing and approving the sale of certain finished goods, work in progress, raw materials, and certain other assets to the Debtors' customers free and clear of liens, claims, and encumbrances.

9. On November 16, 2023, the Court entered an order [D.I. 92] establishing certain procedures for the sale or abandonment of de minimis assets.

10. In addition, the Trustee has entered into a number of stipulations with the Debtors' customers regarding customer-owing tooling, which have been filed with the Court under certification of counsel.

11. On January 2, 2024, the Trustee filed the *Motion of the Chapter 7 Trustee for Entry of an (i) Approving the Sale of Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (ii) Granting Related Relief* [D.I. 207] (the "**Sale Motion**"). By the Sale Motion, the Trustee seeks, among other things, authorization and approval to sell substantially all of the Debtors' assets to PSC Industries, Inc.

## PRE-PETITION SENIOR SECURED DEBT

12. The Debtors are parties to that certain Amended and Restated Credit Agreement dated November 8, 2018, as amended by a Waiver and First Amendment to Credit Agreement and Loan Documents dated May 7, 2019, a Second Amendment to Credit Agreement and Loan Documents dated June 14, 2019, a Third Amendment to Credit Agreement and Loan Documents dated June 28, 2019, a Waiver and Fourth Amendment to Credit Agreement and Loan

Documents dated July 16, 2019, a Fifth Amendment to Credit Agreement dated August 7, 2019, a Sixth Amendment to Credit Agreement dated April 3, 2020, and a Seventh Amendment to Credit Agreement dated April 23, 2020, an Eighth Amendment to Credit Agreement dated August 7, 2020, and a Waiver and Ninth Amendment to Credit Agreement dated November 7, 2022, and further amended by the Forbearance Agreement, as amended (as may have been amended, amended and restated, modified or supplemented the "**Credit Agreement**") by and among Unique Fabricating NA, Inc. ("**US Borrower**") and Unique-Intasco Canada, Inc.[3] ("**Canada Borrower**" and, together with US Borrower, the "**Borrowers**"), Unique Fabricating, Inc. ("**Parent**"), Unique-Chardan, Inc., Unique Molded Foam Technologies, Inc., Unique Prescotech, Inc., Unique Fabricating Realty, LLC, Unique Fabricating South, Inc., and Unique-Intasco USA, Inc. (collectively the "**Guarantors**"), Citizens Bank, National Association, Comerica Bank, Flagstar Bank, FSB, Keybank National Association (individually a "**Senior Lender**," and collectively the "**Senior Lenders**"), and Citizens Bank, National Association, as Administrative Agent for the Lenders (in such capacity, the **"Senior Agent"**).

13. The Senior Lenders represent as follows to the best of their knowledge, information and belief:

    a. As of the Petition Date, the Borrowers owed the Senior Lenders the sum of not less than $36,438,454.27[4] (the "**Senior Debt Obligations**").

    b. The Senior Debt Obligations are secured by a first priority continuing security interest (the "**Senior Pre-Petition Liens**") granted by the US Borrower and the Guarantors in and to all of their right, title and interest in and to all of their property and interests

---

[3] For the avoidance of doubt, Unique-Intasco Canada, Inc. and Unique Fabricating de México, S.A. de C.V. are not debtors in these chapter 7 cases.

[4] This amount includes the Canadian debt. As set forth in paragraph 11 of the Cash Collateral Order, the Senior Agent and Senior Lenders will not assert any claim against the Debtors or the Estates on account of any obligations or debts of Canada Borrower.

in property, all whether then owned or existing or thereafter owned, arising or acquired, and wheresoever located (the "**Collateral**")[5] pursuant to, among other things,

      i.      the Credit Agreement;

      ii.      that certain first priority all-assets security interest granted by the US Borrower and the Guarantors to the Senior Agent pursuant to the terms and conditions of the Security Agreement dated April 29, 2016 as affirmed by a Consent and Reaffirmation of Security Agreement dated November 8, 2018;

      iii.      the deeds of trust or mortgage and security agreements recorded against certain identified real properties owned by Debtors Unique-Prescotech, Inc. and Unique Fabricating South, Inc.;

      iv.      the absolute and unconditional, joint and several Continuing Agreement of Guaranty and Suretyship dated April 29, 2016 of US Borrower and Guarantors, as affirmed by a Consent and Reaffirmation of, and Amendment to, Continuing Agreement of Guaranty and Suretyship dated November 18, 2018; and

      v.      (v) all other documents related thereto (collectively, as may have been amended, amended and restated, modified or supplemented, the "**Senior Loan Documents**").

      c.      The Senior Pre-Petition Liens were perfected by, among other things, the filing of UCC financing statements (i) with the secretary of state of the state of Delaware with respect to Unique Fabricating, Inc., Unique Fabricating NA, Inc., Unique Molded Foam Technologies, Inc., Unique Prescotech, Inc., and Unique Chardan, Inc. and (ii) with the secretary of state of the state of Michigan with respect to Unique Fabricating South, Inc., Unique Fabricating Realty, LLC and Unique-Intasco USA, Inc.

      d.      No other party perfected any other liens that would have priority over the Senior Pre-Petition Liens, including but not limited to liens arising from any purported purchase money security interests.

      e.      The cash and cash equivalents of the US Borrower and the Guarantors maintained in accounts at the Senior Agent or in an account subject to a Deposit Account Control Agreement in favor of Senior Agent and proceeds of the Collateral now and hereafter received constitute cash collateral of the Senior Agent and Senior Lenders ("**Cash Collateral**") within the meaning of section 363(a) of the Bankruptcy Code.

---

[5] Notwithstanding anything to the contrary herein, the Trustee reserves his rights to object to the inclusion as "Collateral" of any property that is subject to a true lease (but not the Senior Agent's lien, if any, on the debtor-lessee's interest in such lease), any commercial tort claims, or any goods covered by a certificate of title not validly perfected by the Senior Agent pursuant to Article 9 of the Uniform Commercial Code, as adopted by applicable state law (collectively, "**Non-Collateral Assets**"). For the avoidance of doubt, Collateral (as used herein and as subject to the Cash Collateral Order) does not include the interests of Senior Agent and the Senior Lenders in any assets of Unique-Intasco Canada, Inc. or Unique Fabricating de México, S.A. de C.V.

## MATERIAL TERMS OF CASH COLLATERAL ORDER

14. The Trustee and Senior Agent have engaged in extensive arms' length negotiations, which have resulted in the consensual Cash Collateral Order attached hereto. Among other things, the Cash Collateral Order provides the Senior Agent with adequate protection and sets up a sharing arrangement whereby the Senior Agent and Senior Lenders have agreed to apply the proceeds of its Collateral to reasonably fund the administration of these chapter 7 cases as further set forth herein and to provide the opportunity for the Trustee to make a distribution to other creditors of the Estates. This carve-out effectively represents the costs and expenses incurred by Senior Agent in connection with the sale and monetization of the Collateral in the chapter 7 cases.

15. The following is a summary of the material terms of the Cash Collateral Order, in accordance with Bankruptcy Rules 4001(b) and (d) and Local Bankruptcy Rule 4001-2(a)(ii):[6]

| Material Terms and Para of Order | Summary of Material Terms |
|---|---|
| Parties with an Interest in the Cash Collateral (¶ G) | The principal party with an interest in the Cash Collateral is the Senior Agent. **The Senior Agent consents to the Trustee's use of Cash Collateral, subject to the adequate protection and other provisions provided in the Cash Collateral Order.** |
| Use of Cash Collateral (¶ 2) | Subject to the terms and conditions of the Cash Collateral Order and the Budget (defined below), the Trustee is authorized to use Cash Collateral in accordance with the terms of the Budget for (a) preservation of the Debtors' assets, books and records; (b) the collection of receivables generated by the Debtors' operations; (c) the liquidation and sale of the Debtors' assets; and (d) payment of costs of administration of the Chapter 7 Cases, including but not limited to the Trustee's professionals and his commission, as set forth more fully herein, it being understood that the payment of any allowed professional fees and expenses and trustee commission shall come from the Carve-Out (defined below) and shall be subject to approval by this Court. |

---

[6] This summary is qualified in its entirety by reference to the provisions of the Cash Collateral Order. The Cash Collateral Order will control in the event of any inconsistency between this Motion and the Cash Collateral Order.

| Material Terms and Para of Order | Summary of Material Terms |
|---|---|
| Section 552(b), Section 506(c) (¶ J) | The Senior Agent is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. Given the Senior Agent's and Senior Lenders' agreement to permit the use of the Cash Collateral to fund the certain expenses of the administration of the Chapter 7 Cases pursuant to the Carve-Out set forth below, the Senior Agent and Senior Lenders are entitled to a waiver of the provisions of section 506(c) and the "equities of the case" exception in section 552(b) of the Bankruptcy Code. |
| Adequate Protection (¶ 3) | As adequate protection for, and solely to the extent of any decrease in value of the interests of the Senior Agent in the Collateral, including Cash Collateral, on account of the Trustee's use, sale or lease of the Collateral, including Cash Collateral, during the chapter 7 cases, the effects of the Cash Collateral Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Senior Agent is hereby granted an additional and replacement perfected security interest and lien in all assets and property of the Debtors under Section 361(2) of the Bankruptcy Code (other than the Carve-Out (as defined below), Avoidance Actions (as defined below), the Recovery Proceeds (as defined below), the Non-Collateral Assets, and the proceeds of each of the foregoing) to the extent that the Collateral, including Cash Collateral, is used by the Trustee or otherwise decreases in value, with such security interest and lien having the same priority, validity and enforceability as the Senior Pre-Petition Liens (the "**Adequate Protection Lien**"). In addition, in accordance with the terms of the Budget (defined below), the Trustee shall maintain insurance on the Collateral with the Senior Agent listed as lender loss payee. |
| Evidence of Adequate Protection Lien (¶ 4) | The Cash Collateral Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Lien without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the Adequate Protection Lien, or to entitle the Senior Agent to the priorities granted pursuant to the Cash Collateral Order.<br><br>Notwithstanding the foregoing, the Senior Agent may, in its sole discretion, file such security agreements, control agreements, pledge agreements, financing statements, mortgages, notices of liens and other similar documents, and are the Cash Collateral Order grants relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the chapter 7 cases.<br><br>The Trustee shall execute and deliver to the Senior Agent all such financing statements, mortgages, notices and other documents as the Senior Agent may reasonably request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of the Adequate Protection Lien granted by the Cash Collateral Order. The Adequate Protection Lien shall be valid and enforceable |

- 7 -

| Material Terms and Para of Order | Summary of Material Terms |
|---|---|
| | notwithstanding the dismissal of the chapter 7 cases. |
| Disposition of Collateral (¶ 5) | Except as may be set forth in the Cash Collateral Order or in orders of the Bankruptcy Court entered before or after the date of the Cash Collateral Order after notice to the Senior Lenders (and any other person required to receive notice) and a hearing, the Trustee shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior written consent of the Senior Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Senior Agent). All proceeds of the collection, sale, transfer, lease, encumbrance, or other disposition of the Collateral shall be deposited into an account maintained by the Trustee for the Estates in a depository approved by the United States Trustee for this region. On a quarterly basis or sooner if practicable, beginning no later than fifteen (15) days after the quarter ending March 31, 2024, and quarterly thereafter, to the extent funds are available, the Trustee shall pay to Senior Agent by check or wire transfer the aggregate amount of all proceeds of Collateral less any amounts reserved and/or deducted for the Carve-Out, after providing a statement of expenses and reasonable supporting materials. Such remittances shall be applied to repay the Senior Debt Obligations in such order as is set forth in the Credit Agreement. Under no circumstances shall the Senior Agent or Senior Lenders be required to advance any funds to the Trustee. |
| Sharing Arrangement (¶ 6) | The Senior Agent and Senior Lenders agree to carve-out from the proceeds of their Collateral the following, which shall be held by the Trustee free and clear of the Senior Pre-Petition Liens, the Adequate Protection Lien, and any other liens:<br><br>(a) <u>Administrative Expense Carve-Out</u>. The Senior Agent shall provide the Trustee from the funds currently or then on deposit in the Debtors' bank accounts or Trustee's bank accounts with an amount sufficient to enable the Trustee to pay the reasonable and necessary administrative expense claims incurred in the Chapter 7 Cases, including without limitation, such allowed professional fees and expenses, allowed trustee commissions, costs of independent contractors used by the Trustee, and reasonable and necessary costs to preserve the Collateral, but in all of the above cases subject to the Budget as defined below (the "**Administrative Expense Carve-Out**"). Within fourteen (14) days of the filing of the Motion, the Trustee shall provide the Senior Agent with a budget detailing the Trustee's best estimate of reasonable and necessary administrative expenses to be incurred in the Chapter 7 Cases and provide an updated Budget as needed to the Senior Agent and the Senior Lenders thereafter (as amended, the "**Budget**"). The Senior Agent may provide a written notice of reasonable objection to the Budget to the Trustee within fifteen (15) days after receipt of any Budget. The Trustee and the Senior Agent shall thereafter work in good faith to arrive at an acceptable Budget and to amend the same as appropriate. If the Trustee and the Senior Agent are unable to resolve any dispute with respect to the Budget promptly, the Trustee shall submit such dispute to the Bankruptcy Court for prompt resolution to determine any reasonable and necessary administrative expenses, which shall thereafter be deemed incorporated into the Budget. |

| Material Terms and Para of Order | Summary of Material Terms |
|---|---|
| | (b) <u>Other Creditor Carve-Out.</u> After the reserve or payment of Administrative Expense Carveout, the Estates shall be entitled to 13% of the Net Proceeds (defined below) of Collateral, which amounts shall be free and clear of any liens, claims or interests of the Senior Agent or any other party (the "**Other Creditor Carve-Out**" and together with the Administrative Expense Carve-Out, the "**Carve-Out**"). The term "**Net Proceeds**" shall mean gross proceeds of the Collateral in which the Senior Agent holds a first priority lien less the Administrative Expense Carve-Out.<br><br>(c) For the avoidance of doubt, the Senior Agent and Senior Lenders shall not be entitled to assert any deficiency claim against the Carve-Out. Further, as part of the agreement herein, the Senior Agent and Senior Lenders waive their right to assert any deficiency claim against 90-day avoidance action recoveries under sections 547 and 550 of the Bankruptcy Code (collectively, the "**Avoidance Actions**"). As such, professional fees in connection with prosecuting the Avoidance Actions shall not be part of the Administrative Expense Carve-Out. The Senior Agent and Senior Lenders reserve their rights to assert a deficiency claim against the Estates as unsecured creditors except with respect to the Carve-Out and the proceeds of Avoidance Actions.<br><br>(d) Furthermore, the Senior Agent and Senior Lenders reserve the right to assert a deficiency claim against the Estates as unsecured creditors with respect to the proceeds or recovery from (i) any commercial tort claims, (ii) derivative actions and (iii) any director and officer liability insurance policies (the "**Recovery Proceeds**"). |
| Release of Claims (¶¶ F,7) | The Trustee has had an adequate opportunity to investigate the amount, extent, validity, priority, and perfection of the Senior Debt Obligations and the Senior Pre-Petition Liens, and any potential claims or causes of action against the Senior Agent or the Senior Lenders. As a result of the investigation and the agreements set forth in the Cash Collateral Order, the Trustee has agreed: (i) not to object to: (a) validity, extent, perfection or priority of the Senior Pre-Petition Liens or (b) the validity, allowability, priority, status or amount of the Senior Debt Obligations (collectively, such actions in clauses (a) and (b) being a "**Claim Objection**"); and (ii) to release the Senior Agent or Senior Lenders from any potential claims or causes of action.<br><br>Any and all Claim Objections, potential claims or causes of action shall be deemed to be forever waived, released and barred, and the Senior Debt Obligations shall be deemed allowed as a secured claim within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with the chapter 7 cases.<br><br>Any party in interest, other than the Trustee, must, after obtaining standing approved by the Bankruptcy Court, commence a contested matter or adversary proceeding raising a Claim Objection against the Senior Agent and Senior Lenders no later than February 20, 2024, <u>which is 104 days after the Petition Date and more than 40 days after the filing of the Motion</u>.<br><br>Notwithstanding the terms of the Cash Collateral Order, none of the following |

| Material Terms and Para of Order | Summary of Material Terms |
|---|---|
| | entities, or any of their subsidiaries or affiliates, are permitted to file any Claim Objection with respect to the Senior Debt Obligations or the Senior Pre-Petition Liens: General Motors, LLC, FCA US, LLC, on behalf of itself and the final vehicle assembly entities FCA Mexico, S.A. de CV and FCA Canada Inc., Yangfeng Automotive Interior Systems Co., A. O. Smith Corporation, Adient US LLC, US Farathane LLC, Nitto, Inc., Faurecia Interior Systems, Inc., Faurecia Interior Systems Saline, LLC, Faurecia Interiors Louisville, LLC, and Faurecia Sistemas Automotrices de Mexico S.A. de C.V.[7] |
| Wavier under Sections 506(c) and 552(b) (¶ 8) | Given the Senior Agent's and Senior Lenders' agreement to fund certain of the expenses of the administration of the chapter 7 cases pursuant to the Carve-Out set forth in the Cash Collateral Order, the Trustee, on behalf of the Estates, waives and will not assign or permit any other party to assert any claim under section 506(c) or section 552(b) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, enhancement of, or realization by the Senior Agent or Senior Lenders upon the Collateral. Notwithstanding the foregoing, the Trustee shall be entitled to enforce the provisions of the Cash Collateral Order, including, without limitation, the Carve-Out. |
| 363 Sale (¶ 9) | The Trustee shall, in accordance with the Cash Collateral Order, seek approval of a sale or sales (each, a "**Sale**") of substantially all of the Debtors' remaining assets excluding accounts receivable (the "**Sale Assets**") other than sales covered by the De Minimis Sale Procedure Order, the terms of which shall govern De Minimis Sales. |
| Right to Credit Bid (¶ 10) | Any amount of any Successful Credit Bid (defined below) of the Senior Agent or Senior Lenders shall be treated as Net Proceeds. If the Senior Agent on behalf of the Senior Lenders, as applicable, or any of the Senior Agent or Senior Lenders individually, makes a credit bid for all or a portion of the Collateral that is determined by a separate order of this Court to be the highest and/or best bid for such Collateral (a "**Successful Credit Bid**"), then the Senior Agent or Senior Lenders, as applicable, shall pay to the Trustee, at closing, cash in an amount equal to 13% of such Successful Credit Bid, which 13% shall be part of the Other Creditor Carve-Out with respect to such sale of Collateral. |
| Canadian Debt (¶ 11) | On December 8, 2023, the Trustee closed a sale of 100% of the equity in Canada Borrower; and on or about December 13, 2023, the Senior Agent and Senior Lenders sold, assigned, transferred, and conveyed to the buyer all of the loan obligations and debts evidenced by four CA Term Notes executed and delivered by Canada Borrower, as set forth more fully in that certain Loan Sale Agreement between the Senior Agent and Senior Lenders and the buyer. The Senior Agent, the Senior Lenders, and their successors or assigns shall not assert any claim against the Debtors or the Estates on account of any obligations or debts of Canada Borrower. Further, the Senior Agent, on behalf of itself and the Senior Lenders, acknowledges and agrees that the proceeds from the sale of 100% of the equity in Canada Borrower are not Cash Collateral and are unencumbered. |

---

[7] This provision of the Cash Collateral Order is consistent with the provisions of a certain prepetition Accommodation Agreement by and among the above-named customers, the Senior Agent, and the Debtors.

16. Other than set forth above, the Cash Collateral Order does not contain any other provisions required to be highlighted by Local Rule 4001-2.

**RELIEF REQUESTED**

17. By this Motion, the Trustee seeks entry of the Cash Collateral Order: (a) authorizing the Trustee to use Cash Collateral, subject to the terms and conditions set forth therein; (b) granting adequate protection to the Senior Agent; (c) modifying the automatic stay; (d) approving the Sharing Arrangement, and (e) granting related relief.

**BASIS FOR RELIEF REQUESTED**

18. The Trustee requires access to Cash Collateral in order to administer and preserve the value of the Estates and to liquidate the Collateral and maximize a return for all creditors, including through the sale of substantially all of the Debtors' assets as set forth in the Sale Motion. The inability to use such Cash Collateral would irreparably harm the Estates and their creditors. The provisions of the Cash Collateral Order, including the Sharing Arrangement at paragraph 6, are in the best interests of the Estates and creditors and should be approved.

**I.    The Trustee's Request to Use Cash Collateral is Authorized under Section 363 of the Bankruptcy Code and Should be Granted**

19. The Trustee's use of Cash Collateral, is governed by section 363 of the Bankruptcy Code. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents, or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). In addition, section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used ... or proposed to be used ... by the trustee, the court... shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

20. Here, use of Cash Collateral is appropriate. First, **the Senior Lenders have consented to the use of Cash Collateral on the terms set forth in the Cash Collateral Order.** Therefore, use of Cash Collateral is appropriate pursuant to section 363(c)(2)(A) of the Bankruptcy Code. Moreover, the Trustee has proposed appropriate forms of adequate protection.

21. Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a trustee uses cash collateral. Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006), *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable consideration arising from particular facts of each proceeding"); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry … left to the vagaries of each case….") (citation and quotation omitted).

22. The concept of adequate protection is designed to shield a secured creditor from diminution in value of its interest in collateral during the period of debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-181 (Bankr. D. Del. 1993) (holding that adequate protection for use of cash collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

23. The Trustee respectfully submits that the proposed adequate protection in the form of the Adequate Protection Lien is appropriate and sufficient under the circumstances. Indeed, the terms and conditions on which the Trustee may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code. If the Cash Collateral Order is entered, the Trustee will have access to funds to administer the chapter 7 cases, and thereby provide an opportunity to maximize value for the benefit of all stakeholders. At the same time, the Senior Agent will be adequately protected in a manner that it has negotiated in exchange for consenting to the use of Cash Collateral.

## II. The Sharing Arrangement Should Be Approved

24. The Sharing Arrangement described above is an essential and integral provision of the Cash Collateral Order. By virtue of the Sharing Arrangement, the Senior Agent and Senior Lenders have agreed to carve-out from the proceeds of their Collateral: (i) Administrative Expense Carve-Out; and (ii) the Other Creditor Carve-Out – all of which shall be held by the Trustee free and clear of the Senior Pre-Petition Liens, the Adequate Protection Lien, and any other liens. Further, the Senior Agent and Senior Lenders have agreed to waive their right to

assert any deficiency claim against any Avoidance Actions.[8] The Sharing Agreement provides essential benefits to the Estates and should be approved under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

25. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

26. In addition, Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

27. In determining whether to approve a compromise pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, a bankruptcy court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy, ¶ 9019.2, 9019-4 (15th ed.) (quoting *In re Drexel Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991)); *see also In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

28. Here, this standard is easily met given the substantial benefits the Estates will receive from the Sharing Arrangement. The Carve-Out will provide the Trustee with

---

[8] As set forth above, the Senior Agent and Senior Lenders reserve the right to assert a deficiency claim against the Estates as unsecured creditors with respect to the proceeds or recovery from (i) any commercial tort claims, (ii) derivative actions and (iii) any director and officer liability insurance policies. *See* Cash Collateral Order ¶ 6(d).

unencumbered cash to fund the administrative expenses of these chapter 7 cases. The Carve-Out also provides a mechanism for a distribution to other creditors who otherwise would likely be out of the money.

29. Further, the Trustee has had an adequate opportunity to investigate the Senior Debt Obligations, the Senior Pre-Petition Liens, and any potential claims or causes of action against the Senior Agent and Senior Lenders. Based on the results of that investigation, the Trustee respectfully submits that the Sharing Arrangement is in the best interests of the Estates and should be approved.

## WAIVER OF BANKRUPTCY RULE 6004(h)

30. To the extent applicable, the Trustee requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h) or any similar rule. Given the Trustee's need to access Cash Collateral, waiver of the stay is appropriate under the circumstances.

## NOTICE

31. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel if known: (i) the Office of the United States Trustee; (ii) upon all parties who have requested notice pursuant to Federal Rules of Bankruptcy Procedure Rule 2002; (iii) counsel to the Senior Agent; and (iv) parties known by the Trustee to assert secured claims with respect to or any interest in the Collateral. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

32. No prior request for the relief sought in this Motion has been made to this Court or any other Court.

WHEREFORE, the Trustee respectfully requests entry of the Cash Collateral Order, order substantially in the form attached hereto, granting the relief requested in this Motion and granting the Trustee such other and further relief as is just and proper.

Dated: January 8, 2024

CHIPMAN BROWN CICERO & COLE, LLP

*/s/ Bryan J. Hall*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Alan M. Root (No. 5427)
Bryan J. Hall (No. 6285)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
(302) 295-0199 (fax)
chipman@chipmanbrown.com
olivere@chipmanbrown.com
root@chipmanbrown.com
hall@chipmanbrown.com

*Counsel for the Chapter 7 Trustee*