# CASH COLLATERAL ORDER

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| UNIQUE FABRICATING, INC., *et al.*,[1] | Case No. 23-11824 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No.** |

**FINAL ORDER (I) AUTHORIZING THE TRUSTEE TO USE
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION,
(III) MODIFYING THE AUTOMATIC STAY, AND
(IV) APPROVING SHARING ARRANGEMENT**

THIS MATTER having come before this Court upon a motion (the "**Motion**")[2] by David W. Carickhoff, Chapter 7 Trustee (the "**Trustee**") for the bankruptcy estates (the "**Estates**") of the above-captioned debtors (collectively, the "**Debtors**") in these chapter 7 cases (the "**Chapter 7 Cases**"), seeking, among other things, entry of an order (this "**Order**"):

(i) authorizing the Trustee to use cash collateral of Senior Agent and Senior Lenders, pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), on terms and conditions more fully described herein;

(ii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order;

(iii) granting to the Senior Agent adequate protection against the diminution in value of the Collateral (defined below) in the form of an Adequate Protection Lien (as defined below);

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Unique Fabricating, Inc. (6791); Unique Fabricating NA, Inc. (8349); Unique Fabricating South, Inc. (9868); Unique-Prescotech, Inc. (9729); Unique-Chardan, Inc. (8350); Unique Molded Foam Technologies, Inc. (3749); Unique-Intasco USA, Inc. (8572); and Unique Fabricating Realty, LLC (N/A).

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

(iv) approving a sharing arrangement between the Trustee and Senior Agent and Senior Lenders; and

(v) waiving the fourteen-day stay provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

THE COURT HAVING CONSIDERED THE MOTION and any evidence submitted at the hearing on the Motion scheduled for January 30, 2024 (the "**Hearing**") and in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9014 and the local rules of the Court; due and proper notice of the Motion and the Hearing having been given; the Hearing having been held and concluded; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Estates and their creditors, and is essential for the liquidation of the Debtors' assets; and all objections, if any, to the entry of this Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING OR IN CONNECTION WITH SUBMISSIONS MADE IN ADVANCE OF THE HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. **Petition Date.** On November 8, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

B. **Appointment of Trustee.** On or about November 8, 2023, the Trustee was appointed as interim chapter 7 trustee of the Estates pursuant to section 701(a) of the Bankruptcy

Code. The meeting of creditors in these cases pursuant to section 341 of the Bankruptcy Code was held and concluded on December 15, 2023.

C. **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 7 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D. **Notice**. Notice of the Hearing and the relief requested in the Motion has been provided by the Trustee, whether by, telecopy, email, first-class U.S. Mail, overnight courier or hand delivery on January 8, 2024, to certain parties in interest, including: (i) the Office of the United States Trustee; (ii) the parties who have requested notice of proceedings in the Chapter 7 Cases pursuant to Bankruptcy Rule 2002; (iii) counsel to the Senior Agent; and (iv) parties known by the Trustee to assert secured claims with respect to or any interest in the Collateral (as defined below). Under the circumstances, such notice of the Hearing and the relief requested in the Motion is due and sufficient notice and complies with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 4001(d) and the local rules of the Court.

E. **Senior Agent's Representations.** The Senior Agent represents to the best of its knowledge, information and belief, as follows: (1) certain of the Debtors are parties to that certain Amended and Restated Credit Agreement dated November 8, 2018, as amended by a Waiver and First Amendment to Credit Agreement and Loan Documents dated May 7, 2019, a Second Amendment to Credit Agreement and Loan Documents dated June 14, 2019, a Third Amendment to Credit Agreement and Loan Documents dated June 28, 2019, a Waiver and Fourth Amendment to Credit Agreement and Loan Documents dated July 16, 2019, a Fifth

Amendment to Credit Agreement dated August 7, 2019, a Sixth Amendment to Credit Agreement dated April 3, 2020, and a Seventh Amendment to Credit Agreement dated April 23, 2020, an Eighth Amendment to Credit Agreement dated August 7, 2020, and a Waiver and Ninth Amendment to Credit Agreement dated November 7, 2022, and further amended by the Forbearance Agreement, as amended (as may have been amended, amended and restated, modified or supplemented the "**Credit Agreement**") by and among Unique Fabricating NA, Inc. ("**US Borrower**") and Unique-Intasco Canada, Inc.[3] ("**Canada Borrower**" and, together with US Borrower, the "**Borrowers**"), Unique Fabricating, Inc. ("**Parent**"), Unique-Chardan, Inc., Unique Molded Foam Technologies, Inc., Unique Prescotech, Inc., Unique Fabricating Realty, LLC, Unique Fabricating South, Inc., and Unique-Intasco USA, Inc. (collectively the "**Guarantors**"), Citizens Bank, National Association, Comerica Bank, Flagstar Bank, FSB, Keybank National Association (individually a "**Senior Lender**," and collectively the "**Senior Lenders**"), and Citizens Bank, National Association, as Administrative Agent for the Lenders (in such capacity, the "**Senior Agent**"); (2) as of the Petition Date, the Borrowers owed the Senior Lenders the sum of not less than $36,438,454.27[4] (the "**Senior Debt Obligations**"); (3) the Senior Debt Obligations are secured by a first priority continuing security interest (the "**Senior Pre-Petition Liens**") granted by the US Borrower and the Guarantors in and to all of their right, title and interest in and to all of their property and interests in property, all whether then owned or existing or thereafter owned, arising or acquired, and wheresoever located (the

---

[3] For the avoidance of doubt, Unique-Intasco Canada, Inc. and Unique Fabricating de México, S.A. de C.V. are not debtors in these Chapter 7 Cases.

[4] This amount includes the Canadian debt. As set forth in paragraph 11 below, the Senior Agent and Senior Lenders will not assert any claim against the Debtors or the Estates on account of any obligations or debts of Canada Borrower.

"**Collateral**")[5] pursuant to, among other things, (i) the Credit Agreement; (ii) that certain first priority all-assets security interest granted by the US Borrower and the Guarantors to the Senior Agent pursuant to the terms and conditions of the Security Agreement dated April 29, 2016 as affirmed by a Consent and Reaffirmation of Security Agreement dated November 8, 2018; (iii) the deeds of trust or mortgage and security agreements recorded against certain identified real properties owned by Debtors Unique-Prescotech, Inc. and Unique Fabricating South, Inc.; (iv) the absolute and unconditional, joint and several Continuing Agreement of Guaranty and Suretyship dated April 29, 2016 of US Borrower and Guarantors, as affirmed by a Consent and Reaffirmation of, and Amendment to, Continuing Agreement of Guaranty and Suretyship dated November 18, 2018; and (v) all other documents related thereto (collectively, as may have been amended, amended and restated, modified or supplemented, the "**Senior Loan Documents**"); (4) the Senior Pre-Petition Liens were perfected by, among other things, the filing of UCC financing statements (i) with the secretary of state of the state of Delaware with respect to Unique Fabricating, Inc., Unique Fabricating NA, Inc., Unique Molded Foam Technologies, Inc., Unique Prescotech, Inc., and Unique Chardan, Inc. and (ii) with the secretary of state of the state of Michigan with respect to Unique Fabricating South, Inc., Unique Fabricating Realty, LLC and Unique-Intasco USA, Inc.; (5) that no other party perfected any other liens that would have priority over the Senior Pre-Petition Liens, including but not limited to liens arising from any purported purchase money security interests; and (6) the cash and cash equivalents of the US Borrower and the Guarantors maintained in accounts at the Senior Agent or in an account subject

---

[5] Notwithstanding anything to the contrary herein, the Trustee reserves his rights to object to the inclusion as "Collateral" of any property that is subject to a true lease (but not the Senior Agent's lien, if any, on the debtor-lessee's interest in such lease), any commercial tort claims, or any goods covered by a certificate of title not validly perfected by the Senior Agent pursuant to Article 9 of the Uniform Commercial Code, as adopted by applicable state law (collectively, "**Non-Collateral Assets**"). For the avoidance of doubt, Collateral (as used herein and as subject to this Order) does not include the interests of Senior Agent and the Senior Lenders in any assets of Unique-Intasco Canada, Inc. or Unique Fabricating de México, S.A. de C.V.

to a Deposit Account Control Agreement in favor of Senior Agent and proceeds of the Collateral now and hereafter received constitute cash collateral of the Senior Agent and Senior Lenders ("**Cash Collateral**") within the meaning of section 363(a) of the Bankruptcy Code.

  F. **Trustee Investigation.** The Trustee has had an adequate opportunity to investigate, and has investigated, the amount, extent, validity, priority, and perfection of the Senior Debt Obligations and the Senior Pre-Petition Liens and any potential claims or causes of action against the Senior Agent or Senior Lenders. As a result of the investigation and the agreements set forth in this Order, the Trustee has agreed: (i) not to object to (a) the validity, extent, perfection or priority of the Senior Pre-Petition Liens or (b) the validity, allowability, priority, status or amount of the Senior Debt Obligations (collectively, such actions in clauses (a) and (b) being a "**Claim Objection**"); and (ii) to release the Senior Agent or Senior Lenders from any potential claims or causes of action.

  G. **Senior Agent and Senior Lenders' Consent.** The Senior Agent and Senior Lenders are willing to consent to the Trustee's use of Cash Collateral, subject to the adequate protection and other provisions provided herein.

  H. **Need to Use Cash Collateral.** A need exists for the Trustee to use Cash Collateral of the Senior Agent and Senior Lenders in order to administer and preserve the value of the Estates. The inability to use such Cash Collateral would irreparably harm the Estates and their creditors.

  I. **Adequate Protection for the Senior Agent**. The Senior Agent is entitled to receive adequate protection pursuant to sections 361, 362, 363 and 507(b) of the Bankruptcy Code for any decrease in the value of its interests in the Collateral, including the Cash Collateral, resulting from the Trustee's use, sale or lease of the Cash Collateral during the Chapter 7 Cases,

the effects of this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, the Trustee will grant the Adequate Protection Lien and provide the other protections to the Senior Agent (the "**Senior Lender Protections**") set forth herein.

   J. **Section 552(b); Section 506(c)**. The Senior Agent is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. Given the Senior Agent's and Senior Lenders' agreement to permit the use of the Cash Collateral to fund the certain expenses of the administration of the Chapter 7 Cases pursuant to the Carve-Out set forth below, the Senior Agent and Senior Lenders are entitled to a waiver of the provisions of section 506(c) and the "equities of the case" exception in section 552(b) of the Bankruptcy Code.

   K. **Business Judgment and Good Faith.** The terms and conditions of this Order are fair, reasonable, and the best available under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and consideration. This Order was negotiated in good faith and at arms' length between the Trustee, on the one hand, and the Senior Agent and Senior Lenders, on the other.

   L. **Relief Essential; Best Interest**. The relief requested in the Motion is necessary, essential, and appropriate for the preservation of the Debtors' assets and personal property. It is in the best interest of the Estates that the Trustee be permitted to use the Cash Collateral subject to the terms of this Order.

   **NOW, THEREFORE**, on the Motion of the Trustee and the record before this Court with respect to the Motion, and with the consent of the Trustee and the Senior Agent and Senior Lenders to the form and entry of this Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted**. The Motion is granted in accordance with the terms and conditions set forth in this Order.

2. **Authorization to Use Cash Collateral**. Subject to the terms and conditions of this Order and the Budget (defined below), the Trustee is authorized to use Cash Collateral in accordance with the terms of the Budget for (a) preservation of the Debtors' assets, books and records; (b) the collection of receivables generated by the Debtors' operations; (c) the liquidation and sale of the Debtors' assets; and (d) payment of costs of administration of the Chapter 7 Cases, including but not limited to the Trustee's professionals and his commission, as set forth more fully herein, it being understood that the payment of any allowed professional fees and expenses and trustee commission shall come from the Carve-Out (defined below) and shall be subject to approval by this Court.

3. **Adequate Protection**. As adequate protection for, and solely to the extent of any decrease in value of the interests of the Senior Agent in the Collateral, including Cash Collateral, on account of the Trustee's use, sale or lease of the Collateral, including Cash Collateral, during the Chapter 7 Cases, the effects of this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Senior Agent is hereby granted an additional and replacement perfected security interest and lien in all assets and property of the Debtors under Section 361(2) of the Bankruptcy Code (other than the Carve-Out (as defined below), Avoidance Actions (as defined below), the Recovery Proceeds (as defined below), the Non-Collateral Assets, and the proceeds of each of the foregoing) to the extent that the Collateral, including Cash Collateral, is used by the Trustee or otherwise decreases in value, with such security interest and lien having the same priority, validity and enforceability as the Senior Pre-Petition

Liens (the "**Adequate Protection Lien**"). In addition, in accordance with the terms of the Budget (defined below), the Trustee shall maintain insurance on the Collateral with the Senior Agent listed as lender loss payee.

4. **Evidence of Adequate Protection Lien.** This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Lien without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the Adequate Protection Lien, or to entitle the Senior Agent to the priorities granted herein. Notwithstanding the foregoing, the Senior Agent may, in its sole discretion, file such security agreements, control agreements, pledge agreements, financing statements, mortgages, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. The Trustee shall execute and deliver to the Senior Agent all such financing statements, mortgages, notices and other documents as the Senior Agent may reasonably request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of the Adequate Protection Lien granted hereby. The Adequate Protection Lien shall be valid and enforceable notwithstanding the dismissal of the Chapter 7 Cases.

5. **Disposition of Collateral.** Except as may be set forth in this Order or in orders of the Bankruptcy Court entered before or after the date of this Order after notice to the Senior Lenders (and any other person required to receive notice) and a hearing, the Trustee shall not

sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior written consent of the Senior Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Senior Agent). All proceeds of the collection, sale, transfer, lease, encumbrance, or other disposition of the Collateral shall be deposited into an account maintained by the Trustee for the Estates in a depository approved by the United States Trustee for this region. On a quarterly basis or sooner if practicable, beginning no later than fifteen (15) days after the quarter ending March 31, 2024, and quarterly thereafter, to the extent funds are available, the Trustee shall pay to Senior Agent by check or wire transfer the aggregate amount of all proceeds of Collateral less any amounts reserved and/or deducted for the Carve-Out, after providing a statement of expenses and reasonable supporting materials. Such remittances shall be applied to repay the Senior Debt Obligations in such order as is set forth in the Credit Agreement. Under no circumstances shall the Senior Agent or Senior Lenders be required to advance any funds to the Trustee.

6. **Sharing Agreement**. The Senior Agent and Senior Lenders agree to carve-out from the proceeds of their Collateral the following, which shall be held by the Trustee free and clear of the Senior Pre-Petition Liens, the Adequate Protection Lien, and any other liens:

(a) **Administrative Expense Carve-Out**. The Senior Agent shall provide the Trustee from the funds currently or then on deposit in the Debtors' bank accounts or Trustee's bank accounts with an amount sufficient to enable the Trustee to pay the reasonable and necessary administrative expense claims incurred in the Chapter 7 Cases, including without limitation, such allowed professional fees and expenses, allowed trustee commissions, costs of independent contractors used by the Trustee, and reasonable and necessary costs to preserve the Collateral, but in all of the above cases subject to the Budget as defined below (the

"**Administrative Expense Carve-Out**"). Within fourteen (14) days of the filing of the Motion, the Trustee shall provide the Senior Agent with a budget detailing the Trustee's best estimate of reasonable and necessary administrative expenses to be incurred in the Chapter 7 Cases and provide an updated Budget as needed to the Senior Agent and the Senior Lenders thereafter (as amended, the "**Budget**"). The Senior Agent may provide a written notice of reasonable objection to the Budget to the Trustee within fifteen (15) days after receipt of any Budget. The Trustee and the Senior Agent shall thereafter work in good faith to arrive at an acceptable Budget and to amend the same as appropriate. If the Trustee and the Senior Agent are unable to resolve any dispute with respect to the Budget promptly, the Trustee shall submit such dispute to the Bankruptcy Court for prompt resolution to determine any reasonable and necessary administrative expenses, which shall thereafter be deemed incorporated into the Budget.

(b) <u>**Other Creditor Carve-Out**</u>. After the reserve or payment of Administrative Expense Carveout, the Estates shall be entitled to 13% of the Net Proceeds (defined below) of Collateral, which amounts shall be free and clear of any liens, claims or interests of the Senior Agent or any other party (the "**Other Creditor Carve-Out**" and together with the Administrative Expense Carve-Out, the "**Carve-Out**"). The term "**Net Proceeds**" shall mean gross proceeds of the Collateral in which the Senior Agent holds a first priority lien less the Administrative Expense Carve-Out.

(c) For the avoidance of doubt, the Senior Agent and Senior Lenders shall not be entitled to assert any deficiency claim against the Carve-Out. Further, as part of the agreement herein, the Senior Agent and Senior Lenders waive their right to assert any deficiency claim against 90-day avoidance action recoveries under sections 547 and 550 of the Bankruptcy Code (collectively, the "**Avoidance Actions**"). As such, professional fees in connection with

prosecuting the Avoidance Actions shall not be part of the Administrative Expense Carve-Out. The Senior Agent and Senior Lenders reserve their rights to assert a deficiency claim against the Estates as unsecured creditors except with respect to the Carve-Out and the proceeds of Avoidance Actions.

(d) Furthermore, the Senior Agent and Senior Lenders reserve the right to assert a deficiency claim against the Estates as unsecured creditors with respect to the proceeds or recovery from (i) any commercial tort claims, (ii) derivative actions and (iii) any director and officer liability insurance policies (the "**Recovery Proceeds**").

7. **Release of Claims.**

(a) Subject to Paragraph 7(b) hereof, any and all Claim Objections, claims or causes of action against the Senior Agent and Senior Lenders shall be and hereby forever are waived, released and barred, and the Senior Debt Obligations shall be and hereby forever are allowed as a secured claim within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 7 Cases.

(b) Any party in interest, other than the Trustee, must, after obtaining standing approved by the Bankruptcy Court, commence a contested matter or adversary proceeding raising a Claim Objection against the Senior Agent and Senior Lenders no later than February 20, 2024 (the "**Challenge Period**"). Only those parties in interest who properly commence a Claim Objection within the Challenge Period may prosecute such Claim Objection. As to (x) any parties in interest who fail to file a Claim Objection within the Challenge Period, or if any such Claim Objection is filed and overruled, or (y) any and all matters that are not expressly the subject of a timely Claim Objection: (1) all Claim Objections by any party (including, without limitation, any examiner or any other estate representative appointed in the Chapter 7

Cases) shall be forever waived and barred, (2) all of the findings, stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Senior Debt Obligations, the Senior Pre-Petition Liens, the Senior Agent and Senior Lenders shall be of full force and effect and forever binding upon the Estates and all creditors, interest holders, and other parties in interest in the Chapter 7 Cases, and (3) all claims or causes of action against the Senior Agent and Senior Lenders shall be and hereby are released by the Estates, and all creditors, interest holders, and other parties in interest in the Chapter 7 Cases shall be prohibited from asserting such claims, causes of action, and Claim Objections released by the Estates. For the avoidance of doubt, nothing in this Order vests or confers on any person (as defined in the Bankruptcy Code), standing or authority to pursue any cause of action belonging to the Estates, including, without limitation, any Claim Objection with respect to the Senior Debt Obligations and the Senior Pre-Petition Liens. In the event that a party in interest obtains standing and brings a Claim Objection or cause of action against the Senior Agent or the Senior Lenders, the agreement by the Senior Agent and Senior Lenders to provide the Other Creditor Carve-Out to the Estates shall be null and void. For the avoidance of doubt, the assertion by any party that it has: (i) consignment rights in any property in the Debtors' possession, (ii) a purchase money security interest senior to the Pre-Petition Liens of the Senior Agent, or (iii) lien on any item of Collateral senior to the Prepetition Liens of the Senior Agent shall not be deemed a Claim Objection that would void the Senior Agent's and Senior Lenders' obligation to provide the Other Creditor Carve-Out to the Estates hereunder, but the amount of the Other Creditor Carveout shall be calculated on the reduced amount of Net Proceeds that is distributable to the Senior Lenders in light of such claims, rights or security interests.

(c) Notwithstanding the terms of this Order, none of the following entities, or any of their subsidiaries or affiliates, are permitted to file any Claim Objection with respect to the Senior Debt Obligations or the Senior Pre-Petition Liens: General Motors, LLC, FCA US, LLC, on behalf of itself and the final vehicle assembly entities FCA Mexico, S.A. de CV and FCA Canada Inc., Yangfeng Automotive Interior Systems Co., A. O. Smith Corporation, Adient US LLC, US Farathane LLC, Nitto, Inc., Faurecia Interior Systems, Inc., Faurecia Interior Systems Saline, LLC, Faurecia Interiors Louisville, LLC, and Faurecia Sistemas Automotrices de Mexico S.A. de C.V.

8. **Waiver under Sections 506(c) and 552(b).** Given the Senior Agent's and Senior Lenders' agreement to fund certain of the expenses of the administration of the Chapter 7 Cases pursuant to the Carve-Out set forth above, the Trustee, on behalf of the Estates, waives and will not assign or permit any other party to assert any claim under section 506(c) or section 552(b) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, enhancement of, or realization by the Senior Agent or Senior Lenders upon the Collateral. Notwithstanding the foregoing, the Trustee shall be entitled to enforce the provisions of this Order, including, without limitation, the Carve-Out.

9. **363 Sale.** The Trustee shall, in accordance with this Order, seek approval of a sale or sales (each, a "**Sale**") of substantially all of the Debtors' remaining assets excluding accounts receivable (the "**Sale Assets**") other than sales covered by the De Minimis Sale Procedure Order, the terms of which shall govern De Minimis Sales.

10. **Right to Credit Bid**. Any amount of any Successful Credit Bid (defined below) of the Senior Agent or Senior Lenders shall be treated as Net Proceeds. If the Senior Agent on behalf of the Senior Lenders, as applicable, or any of the Senior Agent or Senior Lenders

individually, makes a credit bid for all or a portion of the Collateral that is determined by a separate order of this Court to be the highest and/or best bid for such Collateral (a "**Successful Credit Bid**"), then the Senior Agent or Senior Lenders, as applicable, shall pay to the Trustee, at closing, cash in an amount equal to 13% of such Successful Credit Bid, which 13% shall be part of the Other Creditor Carve-Out with respect to such sale of Collateral.

11. **Canadian Debt.** On December 8, 2023, the Trustee closed a sale of 100% of the equity in Canada Borrower; and on or about December 13, 2023, the Senior Agent and Senior Lenders sold, assigned, transferred, and conveyed to the buyer all of the loan obligations and debts evidenced by four CA Term Notes executed and delivered by Canada Borrower, as set forth more fully in that certain Loan Sale Agreement between the Senior Agent and Senior Lenders and the buyer. The Senior Agent, the Senior Lenders, and their successors or assigns shall not assert any claim against the Debtors or the Estates on account of any obligations or debts of Canada Borrower. Further, the Senior Agent, on behalf of itself and the Senior Lenders, acknowledges and agrees that the proceeds from the sale of 100% of the equity in Canada Borrower are not Cash Collateral and are unencumbered.

12. **No Waiver of Rights.** Nothing herein shall be deemed to be a waiver by the Senior Agent or Senior Lenders of any other rights they may have under the Bankruptcy Code or otherwise, including, by way of example only, the right to seek relief from the automatic stay under section 362(d) or abandonment of property of the estate under section 554(b) of the Bankruptcy Code, subject, in each case, to the continuation of the Carve-Out.

13. **Survival of this Order**. The provisions of this Order and any actions taken pursuant hereto shall be effective on the entry hereof ("**Effective Date**") and shall survive entry of any order which may be entered (i) dismissing the Chapter 7 Cases, (ii) withdrawing the

reference of the Chapter 7 Cases from this Court, or (iii) providing for abstention from handling or retaining of jurisdiction of the Chapter 7 Cases in this Court. The terms and provisions of this Order, including the Senior Lender Protections granted pursuant to this Order shall continue in full force and effect notwithstanding the entry of such order, and such Senior Lender Protections shall maintain their priority as provided by this Order until all the Senior Debt Obligations have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the Order which survive such discharge by their terms).

14. **Objections Overruled**. All objections to the Motion, to the extent not withdrawn or resolved, are hereby overruled.

15. **Waiver of the Fourteen (14) Day Stay Under Bankruptcy Rule 6004(h)**. The fourteen (14) day stay provisions of Bankruptcy Rule 6004(h), to the extent applicable, are waived and shall not apply to this Order.

16. **Retention of Jurisdiction**. This Court has and will retain jurisdiction to enforce this Order according to its terms.